UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYNOR D. FOX,

      Plaintiff,                      Case No. 21-cv-12950
                                          Hon. Matthew F. Leitman

v.

AMIE JENKINS, *et al.*,

      Defendants.

_____/

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 57) TO REPORT AND RECOMMENDATION, (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION (ECF No. 54), (3) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 39, 41); AND (4) DENYING PLAINTIFF'S MOTION FOR DISCOVERY (ECF No. 47)**

Plaintiff Raynor D. Fox is a state inmate in the custody of the Michigan Department of Corrections.  In this prisoner civil-rights action, Fox alleges that Defendant Amie Jenkins violated his Eighth Amendment rights when Jenkins failed to provide him clean clothes during an 18-day quarantine during the COVID-19 pandemic.  Fox also says that Defendants R. Buhl and O. Carter and non-party A. Douglas interfered with his access to the courts by wrongly denying and/or interfering with grievances that he had filed against Jenkins.

Currently before the Court are two motions.  Defendants have moved for summary judgment and Fox has filed a motion to compel discovery. (*See* Def.s'

Mot., ECF No. 41[1]; Fox's Mot., ECF No. 47.)  Both motions were referred to the assigned Magistrate Judge. (*See* Order, ECF No. 15.)

On December 20, 2023, the Magistrate Judge issued a report and recommendation in which she recommended that the Court (1) grant Defendants' motion for summary judgment and (2) deny Fox's discovery motion (the "R&R"). (*See* R&R, ECF No. 54.)  In addition, even though Fox has not filed a formal motion to amend his Complaint to name Douglas as a defendant, the Magistrate Judge recommended that the Court deny Fox leave to do so. (*See id.*, PageID.722-723.)

Fox has now filed objections to the R&R. (*See* Objections, ECF No. 57.)  The Court has carefully reviewed the objections, and for the reasons explained below, the objections are **OVERRULED**, Defendants' motions for summary judgment are **GRANTED**, and Fox's discovery motion is **DENIED**.

# I

The Magistrate Judge described the factual background of Fox's claims and the procedural history of this action in detail in the R&R. (*See* R&R, ECF No. 54, PageID.707-715.)  The Court sets forth below a brief summary relevant to Fox's objections.

---

[1] Docket number 41 is a "corrected" motion for summary judgment that includes an index of authorities that was accidentally omitted when Defendants first filed their motion.  The initial filing can be found at docket number 39.

## A

Fox's claims arise from an 18-day stay in quarantine during the height of the COVID-19 pandemic.  At that time, Fox was incarcerated at the Thumb Correctional Facility ("TCF") in Lapeer, Michigan.  On September 3, 2020, Fox was informed that he needed to move from his regular housing unit (Auburn-A) to a quarantine unit (Franklin-B) because Fox had come into close contact with an individual who had tested positive for COVID-19. (*See* Fox Grievance, ECF No. 20-3, PageID.111.) Because Fox was only given a few minutes to pack his belongings, he did not have time to pack his clothes for his move to Franklin-B. (*See* Fox Dep., ECF No. 41-2, PageID.380-381.)  Thus, when Fox arrived in Franklin-B, the only clothes that he brought with him were the clothes he was wearing. (*See id.*, PageID.374-377.)

After Fox arrived in Franklin-B, he asked the prison counselor for Franklin-B, Defendant Jenkins, to request that the quartermaster (the MDOC employee in charge of providing clothes to inmates) provide him additional clothes, including socks. (*See* Fox Grievance, ECF No. 20-3, PageID.111.)  Jenkins told Fox that he did not need clothes from the quartermaster because his clothes from Auburn-A would be brought to him in quarantine. (*See id.*)

Due to the intervening Labor Day weekend, Fox's clothes from Auburn-A were not brought to him for five days. (*See id.*)  After this five-day delay, a TCF employee delivered certain clothes to Fox, including underwear, shirts, and shorts.

(*See* Fox Dep., ECF No. 41-2, PageID.375.)  But the employee did not bring Fox any additional socks. (*See id.*)  In particular, the employee did not bring Fox several pairs of personal socks that Fox had purchased while in custody. (*See id.*)

Around this same time, Fox requested socks from the quartermaster, but they were not in stock. (*See* Fox Grievance, ECF No. 20-3, PageID.112.)  Fox also says that he repeatedly asked Jenkins to have his personal socks brought over from Auburn-A, but she refused to do so. (*See id.*)  Thus, the entire time that Fox was in quarantine, he had to wear the same single pair of socks. (*See id.*, PageID.111-112.) While Fox did have access to a laundry service during quarantine in Franklin-B, he never sent his socks to be laundered. (*See* Fox Dep., ECF No. 41-2, PageID.379-383.)  Fox says that his socks were of particular importance to him because he previously suffered an injury to his "left foot" which caused that foot to be "quite numb" and "cold." (*Id.*, PageID.381-382. *See also* Fox Grievance, ECF No. 20-3, PageID.112, referring to his "preexisting issues with [his] left foot.")  Due to this condition with his left foot, Fox always wears socks, even when he is asleep. (*See* Fox Dep., ECF No. 41-2, PageID.382.)

After eighteen days in quarantine, Fox was returned to Auburn-A.  Upon his return, he discovered that his left foot was "raw," "itchy," and "inflamed." (Fox Grievance, ECF No.20-3, PageID.112.)  He also noticed an "abscessed sore[]" on his left foot. (*Id.*)  When he had his foot examined by prison medical staff, he was

4

diagnosed with a fungal infection and provided a topical medication. (*See* Fox Dep., ECF No. 41-2, PageID.387-388, 395-396.)  Fox says that the sore healed "within a week to two weeks" and that the sore "never broke open." (*Id.*, PageID.395.)

**B**

On September 30, 2020, Fox filed a grievance against Jenkins arising out her failure to provide him clothing while he was in quarantine. (*See* Fox Grievance, ECF No. 20-3, PageID.111-112.)  In that grievance, Fox emphasized that he spent his entire time in quarantine with just his single pair of socks. (*See id.*)  The MDOC's internal grievance procedure has three steps a prisoner must complete before a grievance is considered exhausted. *See* MDOC Policy Directive 03.02.130 (Mar. 18, 2019).  At step I, Fox's grievance was reviewed by non-party Douglas. (*See* Step I Response, ECF No. 20-3, PageID.110.)  Douglas denied the grievance as untimely. (*See id.*)  Douglas then signed the step I grievance report on a signature line that listed the name of Defendant Carter. (*See id.*)  Douglas wrote that he was signing the form "for" and in place of Carter. (*Id.*)  There is no evidence in the record that Carter ever looked at or had any involvement with the denial of Fox's Step I grievance.

Fox then attempted to appeal the rejection of his step I grievance to step II. (*See* Fox Step II Appeal, ECF No. 20-3, PageID.109.)  It appears that Defendant Buhl refused to consider that appeal on the ground that Fox did not "attach his step 1 [grievance] and step 1 response" to his step II grievance. (Step II Response, ECF

No. 20-3, PageID.108.)   Buhl told Fox that he could "attach" those forms and "resubmit" the step II appeal. (*Id.*)   It is unclear from the record if Fox ever resubmitted his step II appeal.   But he did file a step III appeal, and that appeal upheld the rejection of his initial grievance. (*See* Step III Response, ECF No. 20-3, PageID.106.)

## C

On December 10, 2021, Fox filed this action against Jenkins. (*See* Compl., ECF No. 1.)   In his Complaint, Fox alleged that Jenkins violated his rights under the Eighth Amendment, the due process clause, and several internal MDOC policies. (*See id.*)   He also raised other unidentified claims against unnamed John and Jane Doe Defendants. (*See id.*)

In July 2022, Jenkins moved for summary judgment on the basis that Fox failed to exhaust his claims against her. (*See* Jenkins Mot., ECF No. 20.)   The Magistrate Judge recommended that the Court deny the motion, and the Court adopted that recommendation. (*See* Order, ECF No. 27.)

The Magistrate Judge then ordered Fox to identify the John and Jane Doe Defendants so that those Defendants could be served with the Complaint. (*See* Order, ECF No. 26.)   Fox named Buhl, Carter, and Douglas as the Doe Defendants. (*See* Fox Resp., ECF No. 29.)   Fox said that those individuals had deprived him of his ability to "access the courts" when they denied his grievances against Jenkins. (*Id.*)

Buhl and Carter were thereafter served with the Complaint and appeared in this case. (*See* Dkt.)  However, due to a clerical error, Douglas was never served with the Complaint and never appeared as a defendant. (*See id.*)

Discovery closed on May 12, 2023, and on June 16, 2023, Jenkins, Buhl, and Carter filed a motion for summary judgment. (*See* Def.s' Mot., ECF Nos. 39, 41.) On July 25, 2023, Fox filed a motion requesting that the Defendants respond to certain discovery requests that he had sent them during discovery. (*See* Fox Mot., ECF No. 47.)  Fox also sought permission to take Defendants' depositions. (*See id.*)

**D**

On December 20, 2023, the Magistrate Judge issued the R&R. (*See* R&R, ECF No. 54.)  The Magistrate Judge began with Defendants' motion.  First, she addressed the portion of the motion seeking summary judgment on Fox's claims against Buhl and Carter.  She recommended that the Court grant summary judgment in favor of Buhl and Carter because "even when liberally construed," the record did "not contain any facts from which the Court [could] glean a plausible claim for relief" against them. (*Id.*, PageID.718.)  More specifically, the Magistrate Judge explained that even if Buhl and Carter had denied Fox's grievances or otherwise attempted to frustrate his ability to complete the grievance process, none of their actions prevented him from exhausting his claims against Jenkins or prevented him from pursuing those claims against Jenkins in this Court. (*See id.*, PageID.718-720.)

Indeed, the Court previously *denied* Jenkins' motion for summary judgment in which she argued that Fox failed to exhaust his claims against her, and the Court then considered those claims on their merits. (*See* Order, ECF No. 27.)  The Magistrate Judge further concluded that "Fox's claims against Carter [stood] on even shakier grounds" because Fox never alleged or presented evidence Carter was "personally involved his grievance process." (R&R, ECF No. 54, PageID.720-721.) Finally, the Magistrate Judge pointed out again that Fox had "already […] successfully" rebutted Jenkins' "contention that he did not properly exhaust his administrative remedies." (*Id.*, PageID.722.)

The Magistrate Judge next addressed the claims against non-party Douglas. (*See id.*, PageID.723.)  She acknowledged that Douglas had never appeared in the case, and she recommended that the Court not allow Fox to file an Amended Complaint formally naming Douglas as a defendant because "any claim against Douglas would be futile." (*Id.*)  She reached that conclusion because even if Douglas did deny Fox's step I grievance, that action did not prevent Fox from accessing the Court and pursuing his claims against Jenkins. (*See id.*)

Next, the Magistrate Judge turned to the claims against Jenkins. (*See id.*, PageID.723-730.)  The Magistrate Judge first concluded that Fox's procedural due process claim against Jenkins failed because "the record contains no evidence that Jenkins deprived him of an adequate procedure to challenge the MDOC's failure to

provide clean clothing." (*Id.*, PageID.725.)   The Magistrate Judge then explained that Fox's "claims alleging violations of the MDOC's internal policies fail[ed] because those policies do not have the force of law and no sanction attaches to their violation." (*Id.*; internal quotation marks and citation omitted).

The Magistrate Judge then turned to Fox's Eighth Amendment claim against Jenkins. (*See id.*, PageID.725-726.)   She determined that that claim included two components: (1) a claim arising out of the failure to provide Fox *any* clean clothing during his first five-days in quarantine and (2) a claim arising out of the failure to provide Fox additional socks for his *entire* stay in quarantine. (*See id.*, PageID.728.) She then explained that "[t]o establish an Eighth Amendment violation, a prisoner must first show that he or she has been denied a 'necessity of civilized human existence.'" (*Id.*, PageID.726, quoting *Hadix v. Johnson*, 367 F.3d 513, 515 (6th Cir. 2004).)   And she found that while "[c]lean clothing, to be sure, is a basic human need […] to implicate the Eighth Amendment, a denial of clean clothing must cause more than mere discomfort." (*Id.*, PageID.727.)

The Magistrate Judge first addressed Fox's claim that "being forced to wear the same shirt, shorts, and underwear for the five days of quarantine was cruel and unusual." (*Id.*, PageID.728.)   She concluded that that "five-day deprivation – during which Fox had 'daily' access to a shower – [was] too short-lived to raise constitutional concerns." (*Id.*)

The Magistrate Judge then turned in detail to the component of Fox's Eighth Amendment claim arising out of the "eighteen-day deprivation of clean socks." (*Id.*) The Magistrate Judge began by acknowledging that this component of Fox's claim "present[ed] a much closer question." (*Id.*)  But she ultimately concluded that he had "fail[ed] to raise a genuine dispute of material fact." (*Id.*)   More specifically, she explained that "an eighteen-day deprivation of clean [socks] falls comfortably within the range of deprivations other courts have found to be too brief to violate the Eighth Amendment." (*Id.*, PageID.728-729; collecting cases.)  And she explained that there were several other "mitigating factors which cut against [the] severity" of the alleged violation, including the fact that Fox could have had his socks laundered or cleaned them himself in the sink in his cell. (*See id.*)  Finally, the Magistrate Judge noted that Fox "present[ed] no evidence that [being denied clean socks] posed a serious health risk." (*Id.*, PageID.730.)    For all of these reasons, the Magistrate Judge "recommend[ed] that the Court grant summary judgment in favor of Jenkins." (*Id.*)

The Magistrate Judge then turned to Fox's discovery motion.   She recommended that the Court deny that motion because it was filed "after the close of discovery without asking the Court to extend its [discovery] deadline" and because it was "moot" based on her recommendation to grant Defendants' summary judgment motion. (*Id.*, PageID.731.)

Fox filed timely objections to the R&R on February 9, 2024. (*See* Objections, ECF No. 57.)  The Court will address Fox's objections below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which a party does not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III

### A

In Fox's first and second objections, he primarily argues that the Magistrate Judge erred when she recommended that the Court grant summary judgment against him on his claim that Jenkins violated his constitutional rights.[2] (*See* Objections, ECF No. 57, PageID.748-752.)  These objections are **OVERRULED**.

---

[2] Fox does not expressly limit his objections to the Magistrate Judge's recommendation concerning his Eighth Amendment claim.  But none of his objections attempt to show any error in her conclusion that Fox failed to show that Jenkins violated his right to procedural due process.  Thus, the Court focuses its analysis above on the Magistrate Judge's recommendation that the Court enter summary judgment against Fox on his Eighth Amendment claim.

First, the Court disagrees with Fox's contention that the Magistrate Judge erred when she recommended dismissing the component of his Eighth Amendment claim arising out of the failure to provide him clean clothes during his first five days in quarantine. The Court agrees with the Magistrate Judge's conclusion that, under the facts presented here, the lack of clean clothing was too short-lived to raise constitutional concerns. Notably, Fox does not cite any legal authority for the proposition that being deprived of clean clothing for five days, where he had access to a daily shower and a sink with soap, violates the Eighth Amendment.

Likewise, the court concurs with the Magistrate Judge's conclusion that under the particular facts of this case, Jenkins did not violate Fox's Eighth Amendment rights when she failed to ensure that Fox had more than one pair of socks during his 18-day stay in quarantine. The Court recognizes that Fox endured a measure of discomfort and had to deal with compromised hygienic conditions when he had access to only a single pair of socks for eighteen days. Indeed, nobody would want to have just one pair of socks for that period of time. But the question underlying Fox's Eighth Amendment claim is whether, considering all of the relevant circumstances, his access to only a single pair of socks amounted to the denial of a "necessity of civilized human existence." *Hadix*, 367 F.3d at 525. It did not.

First, as unpleasant as being limited to one pair of socks for eighteen days may be, it is not clear that that limitation rises to the level of being denied a necessity of human existence.  As the Magistrate Judge noted, several courts have held that such a limitation does not constitute an Eighth Amendment violation, and Fox has not cited any authority to the contrary.

Second, Fox had mitigation options available to him.  He could have sent his socks out to be laundered.  He could have washed them in the sink in his cell.  And he could utilized these cleaning options one sock at a time in order to ensure that he always had one sock to cover his left foot.  In addition, he could have worn shoes without socks while having his socks laundered and/or cleaning them himself.  He also could have spent extra time cleaning his feet during the daily shower that was made available to him or by using the sink and soap available to him in his cell.  Admittedly, none of these options are perfect; indeed, each of them would have required Fox to endure some discomfort.  But the availability of these concededly-imperfect mitigation options means that Fox was not faced with a deprivation of a necessity of human existence.

Finally, while there is some indication that the limitation to a single pair of socks may have caused Fox to experience physical consequences, those consequences were not sufficiently serious to rise to an Eighth Amendment violation.  Fox says that he suffered an itchy, red pustule on his left foot that resolved

itself in approximately two weeks and never broke open.  While that condition is certainly uncomfortable, it is not a "sufficiently serious" enough injury to constitute an Eighth Amendment violation. *Jarriett v. Wilson*, 162 F. App'x 394, 402-03 (6th Cir. 2005). *See also Lockett v. Suardini*, 526 F.3d 866, 875-76 (6th Cir. 2008) (holding that an inmate who suffered "only minor lacerations and cuts" did not suffer an injury that rose "to the level that is sufficient to sustain [an] Eighth Amendment violation"); *Wright v. J & S Extradition Servs., LLC*, 2012 WL 1681812, at *8 (M.D. Tenn. May 11, 2012) (holding that "[p]laintiff's conditions of confinement claims fail[ed] to rise to the level of Eighth Amendment violations for cruel and unusual punishment" where, among other things, plaintiff developed "white blisterish pockets forming on the bottoms of the his feet because he was not allowed to change his socks" during five-day transport between prison facilities).

For all of these reasons, the Court concurs with the Magistrate Judge that Fox's Eighth Amendment claim fails as a matter of law.

## B

In Fox's third objection, he appears to argue that he exhausted his claims against Defendants Buhl and Carter and non-party Douglas, and he appears to take issue with a comment the Magistrate Judge made about when Fox could have named Buhl, Douglas, and Carter as Defendants. (*See* Objections, ECF No. 57, PageID.753-755.)  But the Magistrate Judge did not recommend that the Court dismiss Fox's

14

claims arising out of the actions of Buhl, Carter, and Douglas based on lack-of-exhaustion.  Nor did she recommend that the Court dismiss those claims on the basis that the claims were untimely, improperly filed, or never served on Douglas.  The Magistrate Judge reviewed the allegations against Buhl, Carter, and Douglas, and the evidence in the record, and she concluded that, on the merits, the claims brought by Fox were not viable because their actions did not deprive Fox from having access to the Court.  Thus, because this objection addresses a basis for dismissal that was not germane to the Magistrate Judge's recommendation, the objection is **OVERRULED**.

**C**

Fox next objects to the Magistrate Judge's recommendation that the Court deny him leave to name current non-party Douglas as a formal defendant in this case. (*See id.*, PageID.756-758.)  Fox insists that the Court erred when it failed to add Douglas as a defendant and to have him served with the Complaint, and he says that "[b]y the Court's own admission[,] Douglas should be and therefore is a Defendant until proven otherwise." (*Id.*, PageID.756.)  Fox further objects to the failure to serve and join Douglas as a party in his fifth and sixth objections. (*See id.*, PageID.759-761.)

The Court understands Fox's frustration that Douglas was mistakenly not served with the Complaint and not formally added as a defendant in this case.  But, in the R&R, the Magistrate Judge did not recommend that the Court bar Fox from pursuing claims against Douglas *because* Douglas had not been served with the Complaint.  Instead, she reviewed the merits of Fox's allegations against Douglas and concluded that Fox had no viable claim against Douglas because (1) the basis of that claim was that Douglas prevented Fox from accessing the courts and (2) the evidence in the record establishes that Douglas' involvement in the denial of Fox's grievances did not actually prevent Fox from accessing the Court to pursue his claims against Jenkins.  The Court agrees that on this record, Fox has not shown that he has any viable denial-of-access claim against Douglas.  Thus, even if Douglas were a defendant in this case, he would be entitled to summary judgment.  Fox's objections related to Douglas are therefore **OVERRULED**.

**D**

In objections five, six, and seven, Fox primarily appears to object to the Magistrate Judge's recommendation that the Court deny his motion for additional discovery. (*See id.*, PageID.760-762.)  But Fox has not explained how the additional discovery that he wants to take could possibly save his claims.  For example, he says that he wants to take the depositions of Carter, Buhl, and Douglas, but he does not explain what evidence he could elicit at those depositions that would be relevant to

the basis on which the Court is granting summary judgment against him.  And the Court does not see how those depositions would enable Fox to avoid summary judgment.  None of those individuals is alleged to have first-hand information concerning Fox's lack of socks, and nothing they say can change the fact that Fox did have access to the Court.  It is therefore proper to grant summary judgment against Fox for the reasons explained above without permitting Fox to depose those individuals.

For all of these reasons, Fox's objections related to his discovery motion are **OVERRULED**.

### E

Finally, in Fox's eighth objection, he appears to object to the entirety of the Magistrate Judge's recommendation that the Court grant summary judgment in favor of Defendants Buhl and Carter (and, if were named as a formal defendant, Douglas). (*See id.*, PageID.762-771.)  But such a general objection that does not specifically identify the portion of the R&R to which it objects is insufficient.  As the Sixth Circuit has repeatedly explained, parties must raise "specific objections *to the magistrate's report"* in objections to a report and recommendation. *Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009) (emphasis added) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).  Thus, as here, where a plaintiff fails to "specifically address how the [Magistrate Judge's]

factual and legal recommendations were incorrect," a plaintiff has "waived any challenge" to those conclusions. *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482 (6th Cir. 2001) (holding that plaintiff's "conclusory objections" that did not address reasoning of the Magistrate Judge were "insufficient to preserve his appeal of the district court's judgment"). *See also Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004) (explaining that "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context"). This objection is therefore **OVERRULED** on that basis alone. Moreover, and in any event, Fox has not shown how Buhl, Carter, or Douglas prevented him from having access to the courts. Indeed, despite the denial of his grievance and administrative appeals, Fox was able to have the merits of his claims against Jenkins heard in this action. The Court overrules Fox's eighth objection for this additional reason as well.

## IV

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows: (1) Fox's objections (ECF No. 57) to the R&R are **OVERRULED**; (2) the recommended disposition of the R&R (ECF No. 54) is **ADOPTED**; (3) Defendants' motion for summary judgment (ECF Nos. 39, 41) is **GRANTED**; (4) Fox's motion

for additional discovery (ECF No. 47) is **DENIED**; and (5) Fox's claims are

**DISMISSED WITH PREJUDICE**.

      **IT IS SO ORDERED**.

                              s/Matthew F. Leitman
                              MATTHEW F. LEITMAN
                              UNITED STATES DISTRICT JUDGE

Dated:  February 22, 2024

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 22, 2024, by electronic means and/or ordinary mail.

                              s/Holly A. Ryan
                              Case Manager
                              (313) 234-5126